IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JS IP, LLC, | ) | CASE NO. 8:11CV424 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| LIV VENTURES, INC., and LIV HOLDINGS, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' Motion to Dismiss for failure to state a claim for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114. (Filing No. 21). Defendants LIV Ventures, Inc., and LIV Holdings, LLC ("Defendants") contend that Plaintiff JS IP, LLC ("Plaintiff"), has failed to allege sufficient facts to show that a present likelihood of confusion between the parties' marks is plausible. For the reasons discussed below, the Motion will be denied.

**PROCEDURAL HISTORY**

This Complaint ("New Complaint") is the second cause of action Plaintiff has filed against Defendants for trademark infringement under the Lanham Act. Plaintiff filed a complaint ("Original Complaint") on February 4, 2011, alleging six counts against Defendants: (I) common law trademark infringement and unfair competition under the Lanham Act; (II) trademark dilution under the Lanham Act; (III) trademark dilution under Nebraska law; (IV) violation of the Nebraska Uniform Deceptive Trade Practices Act; (V) trademark infringement under Nebraska law; and (VI) unfair competition under Nebraska law. (Case No. 8:11CV37, Filing No. 1.) In response, Defendants filed a Motion to Dismiss and/or Motion for Partial Summary Judgment for failure to state a claim or, in the

alternative, partial summary judgment on the issues of bad faith intent and trademark dilution under Nebraska law. (Case No. 8:11CV37, Filing No. 9.) On July 19, 2011, Plaintiff filed an amended complaint ("Amended Complaint") and added Count I for trademark infringement under the Lanham Act. (Case No. 8:11CV37, Filing No. 35.) In response to Count I of the Amended Complaint, Defendants filed a separate Motion to Dismiss for failure to state a claim. (Case No. 8:11CV37, Filing No. 43.) On August 1, 2011, the Court provided notice to both parties that it would convert Defendants' first motion into a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and would consider matters outside of the pleadings. (Case No. 8:11CV37, Filing No. 39.) Plaintiff submitted no additional evidence. On August 12, 2011, the Court issued its first order dismissing Counts II through VII of the Amended Complaint with prejudice. (Case No. 8:11CV37, Filing No. 42.) In its second order on October 13, 2011, the Court dismissed, without prejudice, Count I of the Amended Complaint for failure to state a claim. (Case No. 8:11CV37, Filing No. 49.) On December 12, 2011, Plaintiff filed the New Complaint against Defendants. (Filing No. 1.)

### FACTUAL BACKGROUND[1]

For purposes of the Motion, the Court accepts as true all well-pled factual allegations in the New Complaint, although the Court need not accept Plaintiff's legal conclusions. The following is a summary of the allegations in the New Complaint.

---

[1] Plaintiff attaches exhibits to the New Complaint to substantiate its factual allegations. In addressing a motion to dismiss, "[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

On November 15, 2008, Plaintiff began licensing the LIV mark to the owners of Fontainebleau Miami Beach hotel ("Fontainebleau") in Miami, Florida, in connection with bar and nightclub services in interstate commerce. The LIV nightclub is located within Fontainebleau. Plaintiff is the owner of U.S. Trademark Registration No. 3,976,284 for Plaintiff's LIV mark. Plaintiff's LIV nightclub is recognized as one of the most popular and highest-grossing nightclubs in the United States. LIV nightclub has been referenced in articles in national publications, including USA Today, The New York Times, Travel and Leisure, People Magazine, US Weekly, and OK! Weekly. LIV nightclub also has been covered in music press and sports press. Miami, Florida, is one of the most popular tourist destinations in the United States and is known for its nightlife. LIV nightclub caters to tourists and is featured in travel guides to Miami, Florida. Upon Plaintiff's information and belief, hundreds of thousands of tourists from Nebraska and surrounding states have visited Miami, Florida, since LIV nightclub opened in November, 2008. Over 5,500 guests from Nebraska and surrounding states have stayed at Fontainebleau since November 2008. These guests are aware of the LIV nightclub because of its prominent position in Fontainebleau. Plaintiff's web site promotes LIV nightclub and has received over 7,600 unique visits from consumers located within Nebraska and 97,000 unique visits from consumers in surrounding states since November 2008.

Defendants operate a business in Omaha, Nebraska, using the trade name LIV Lounge. Defendant LIV Holdings, Inc., is the owner of U.S. Trademark Application Serial No. 77/835,426 for the mark LIV LOUNGE and Design in connection with "bar and cocktail lounge services." The trademark application claims a date of first use of February 27, 2009. Upon Plaintiff's information and belief, Defendants did not begin using the LIV

Lounge mark in commerce until at least May 1, 2009, and possibly as late as September 3, 2009.  Upon learning of Defendants' use of the LIV Lounge mark, Plaintiff, through counsel, contacted Defendants demanding they cease using the mark.  The parties exchanged several communications, but Defendants have not ceased using the LIV Lounge mark.

Plaintiff alleges one count of federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114. Plaintiff alleges that consumers in Omaha, Nebraska, are highly likely to believe that Defendants' LIV Lounge is operated by, licensed by, approved by, or otherwise associated with Plaintiff's LIV nightclub.  Plaintiff claims consumers in Omaha, Nebraska, are likely to be, and have been, deceived or confused as to the source, origin, sponsorship and/or endorsement of Defendants' services and their relationship to Plaintiff.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Instead, the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 630 (citing *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "'Courts must accept . . . specific factual allegations as true but are not required to accept . . . legal conclusions." *Outdoor Cent., Inc. v. GreatLodge.com, Inc.,* 643 F.3d 1115, 1120 (8th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *Williams v. Hobbs,* 658 F.3d 842, 848 (8th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp.,* 561 F.3d 778, 783 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion

to dismiss." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### DISCUSSION

In order to prevail on a claim of trademark infringement under § 1114 of the Lanham Act, a plaintiff must establish that "(1) the marks are valid and legally protectable; (2) the marks are owned by the plaintiff; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 975 (D. Neb. 2008). Defendants do not contend that Plaintiff has failed to allege facts sufficient to establish the first two elements of its Lanham Act claim. Defendants argue, however, that Plaintiff has failed to allege sufficient facts to establish that there is a likelihood of confusion between the parties' marks. As an initial matter, likelihood of confusion is a question of fact, *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 398 (8th Cir. 1987), that is "ill-suited for resolution on a motion to dismiss." *Field of Screams, LLC v. Olney Boys and Girls Cmty. Sports Ass'n*, No. 10-0327, 2011 WL 890501, at *7 (D. Md. 2011).

**I.   Establishing a Likelihood of Confusion Through a Reputation Zone.**

A geographically remote party may establish a likelihood of confusion when "the reputation [of the senior user's mark] has entered the area of the junior user, causing a likelihood of confusion." 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 26:16, :18, :34 (4th ed. 2010). As Professor McCarthy explains, "if the federal registrant can prove that its mark *already* has established a *reputation* in the junior

user's territory, then there is no need for proof of impending entry by an actual sales outlet, for a likelihood of confusion exists *now*." McCarthy, *supra* at § 26:34. A senior user has to establish more than nationwide recognition and actually demonstrate that its reputation has entered the area of the junior user, causing a likelihood of confusion. McCarthy, *supra* at §§ 26:16, :18, :34. Unlike common law claims that require a showing of fame or distinctiveness prior to the junior user's first use, a claim arising under the Lanham Act requires the senior user to show a *present* likelihood of confusion between the two marks. *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1246 (8th Cir. 1994) (emphasis added). It is undisputed that the parties are geographically remote.

Defendants argue that advertising targeted to the remote user's territory is necessary to establish a reputation zone. This argument is incorrect. Targeted advertising is not one of the six factors considered to establish likelihood of confusion. *Frosty Treats, Inc. v. Sony Computer Ent. Am., Inc.*, 426 F.3d 1001, 1008 (8th Cir. 2005). The requirement of targeted advertising is also inconsistent with case law. For example, in *Caesar's World, Inc. v. Caesar's Palace, Inc.*, 179 USPQ 14 (D. Neb. 1973), the owner of Caesar's Palace hotel and casino in Las Vegas brought a trademark infringement lawsuit against a defendant who opened a bar called "Caesar's Palace Lounge" in Omaha, Nebraska. The court found that Caesar's Palace in Las Vegas had acquired a "worldwide reputation for excellence" and that consumers "may be led to believe that the defendant's operations are in some way connected with the plaintiffs' entity offering nightclub and entertainment services in Las Vegas." *Id.* at 16. In *Caesar's World*, there was no evidence that Caesar's Palace in Las Vegas had ever targeted advertising toward Nebraska.

*Caesar's World*, 179 USPQ at 14-16. Moreover, if targeted advertising were required to establish a reputation zone, it would not matter how famous a property is because it would not be protected in an area where it had not advertised. Targeted advertising may be considered when determining whether a reputation zone exists, but it is not required to establish a likelihood of confusion. *See, e.g. Commerce Bancorp, Inc. v. BankAtlantic*, 285 F. Supp. 2d 475, 487, 489 (D. N.J. 2003) (finding no trademark infringement in part because plaintiff's advertisements in The New York Times did not directly penetrate defendant's Florida market).

II. **Plaintiff's New Complaint Alleges New Facts Sufficient to Show Its Reputation Zone in Omaha, Nebraska, Is Plausible.**

Plaintiff's New Complaint alleges new facts that were not alleged in its Amended Complaint. These new factual allegations make Plaintiff's trademark infringement claim under the Lanham Act plausible. The most important difference between the allegations in the Amended Complaint and the allegations here is that Plaintiff now alleges specific facts about consumers in Nebraska and surrounding states, as opposed to general references to consumers nationwide. The Amended Complaint made no reference to consumers in Nebraska. The national media coverage alleged in the New Complaint to establish Plaintiff's national reputation (which includes many of the same articles as the Amended Complaint) now serves to strengthen Plaintiff's allegations that consumers in Nebraska are aware of Plaintiff's LIV mark. The Court previously found that the national media coverage *alone* was insufficient to establish LIV nightclub's reputation in Omaha, Nebraska. (Case No. 8:11CV37, Filing No. 42, 14.) Additionally, the Court's previous finding was based in part on an earlier determination in the same case that Plaintiff had not

8

achieved near-instantaneous nationwide fame in the six months before Defendants' first use of the mark. (Case No. 8:11CV37, Filing No. 49, 6.) The Court stated that even though the time frame to build a nationwide reputation had shifted from six months to three years because the Lanham Act requires a *present* likelihood of confusion, the claim was controlled by the earlier determination under the law-of-the-case doctrine. (*Id.*) Thus, Plaintiff's allegations were still "insufficient to make its 'claim to fame' in Omaha, Nebraska, plausible." (*Id.*) Plaintiff's New Complaint is no longer controlled by the law of the case doctrine. Because of these differences, the Court is considering anew whether Plaintiff has alleged sufficient facts to establish a reputation zone in Omaha, Nebraska, thus establishing a likelihood of confusion.

### III.    Six Factors Showing Likelihood of Confusion.

The Eighth Circuit uses the following six factors to evaluate whether a reasonable jury may find a likelihood of confusion, with no single factor being dispositive:

> (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its good as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its cost and conditions of purchase.

*Frosty Treats, Inc.*, 426 F.3d at 1008. These factors do not operate as a precise test, but instead represent the type of considerations a court should examine when determining likelihood of confusion. *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996). The Court finds Plaintiff has alleged sufficient facts to make most of the factors plausible and has stated a claim for trademark infringement. Each of the factors is discussed in turn.

### A. The strength of the owner's mark.

The strength of a mark consists of both its conceptual strength and commercial strength in the marketplace. *George & Co. v. Imagination Ent. Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). The commercial strength of a mark may be determined according to the public recognition and renown of the mark as evidenced by the extent of advertising, sales volume, features, and reviews in publications. *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1374-76 (Fed. Cir. 2005). Plaintiff has alleged sufficient facts to make the strength of its LIV mark in Omaha, Nebraska, plausible.

Plaintiff asserts its LIV mark is widely recognized by consumers in Nebraska and surrounding states and has a strong reputation with these consumers. To support this allegation, Plaintiff alleges that LIV nightclub is one of the most popular and highest-grossing nightclubs in the United States; LIV nightclub was the highest-grossing nightclub in the country outside of Las Vegas in both 2009 and 2010; online articles published on two different web sites state that LIV nightclub is one of the most popular and highest-grossing nightclubs in the country; LIV nightclub primarily caters to tourists; LIV nightclub has been referenced in several national publications, including two USA Today articles, the New York Times, and Travel and Leisure; LIV nightclub is referenced in travel guides to Miami, Florida, including *Frommer's South Florida 2012*; celebrities frequent LIV nightclub, which has resulted in national press referencing LIV nightclub in People Magazine, US Weekly, and OK! Weekly; famous musicians host events at LIV nightclub, which has resulted in references in the music press, including articles on the web sites of Billboard, VIBE, and MTV; LIV nightclub received significant national media coverage after hosting the NBA

championship party for the Dallas Mavericks, including articles on the web sites of FOX Sports, the Sporting News, and the New York Post; and, after a second location of LIV nightclub was opened at Sun Life Stadium, ESPN.com published an article on LIV nightclub. Plaintiff states consumers in Nebraska and surrounding states read these publications and visit these web sites. Plaintiff further states that as a result of the extensive advertising and promotion of Plaintiff's LIV mark, the volume of sales of the services offered in connection with Plaintiff's LIV mark, the unsolicited media coverage of Plaintiff's LIV mark, and other factors, Plaintiff's LIV mark has achieved a secondary meaning among consumers in Nebraska and surrounding states.

Plaintiff's allegations specific to its reputation in Omaha, Nebraska, are that hundreds of thousands of tourists from Nebraska and surrounding states have visited Miami since the opening of LIV nightclub; over 5,500 guests from Nebraska and neighboring states have stayed at Fontainebleau since the opening of LIV nightclub; these guests are aware of LIV nightclub because of its prominent location within the hotel; and, the web site promoting LIV nightclub has received over 7,600 unique visits from consumers in Nebraska and 97,000 unique visits from consumers in surrounding states.

Defendants contend Plaintiff's New Complaint states threadbare assertions that are factually insufficient to establish the strength of Plaintiff's mark in Omaha, Nebraska. First, Defendants assert that any reference to Fontainebleau is irrelevant because this action centers on the reputation of LIV nightclub, not the hotel. Second, Defendants argue that a passing mention in a nationally circulated publication is not sufficient to plead a market presence in Omaha, Nebraska. Defendants then object to any references to consumers in "Nebraska and surrounding states" because it is possible that none of the consumers

11

in this group is actually from Nebraska. Defendants argue that of the 5,500 guests from Nebraska and surrounding states staying at the Fontainebleau, Plaintiff has not alleged any of these guests went to the LIV nightclub, were of the demographic that would visit the club, or were even aware of it. Defendants argue that the 7,600 web site visits are *de minimus* when compared to the approximately 1.8 million Nebraska residents, and these web site visits may not actually be from unique individuals. In ruling on a motion to dismiss, however, the Court accepts all factual allegations as true and views them in the light most favorable to Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). When the factual allegations are viewed in the light most favorable to Plaintiff, Plaintiff has alleged sufficient facts to make the strength of its mark in Omaha, Nebraska, plausible.

## B.     The similarity between the parties' marks.

A showing of similarity between the parties' marks depends on the overall impression created by the marks, including visional, aural, and definitional attributes. *Luigino's Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999). Plaintiff's new factual allegations are sufficient to show that the similarity of the parties' marks is plausible.

Plaintiff states Defendants' LIV LOUNGE mark is virtually identical to Plaintiff's LIV mark in appearance, pronunciation, and commercial impression with the only difference being the addition of the generic word LOUNGE in Defendant's mark. Plaintiff argues that the addition of the word LOUNGE to Defendants' mark is only descriptive and does not distinguish the marks. *See Caesar's World,* 179 USPQ at 16 ("The fact that the defendant had added the word "Lounge," which is descriptive of the service provided, does not serve to alter the fact of infringement."). Plaintiff asserts the dominance of the term LIV in

Defendants' mark supports a finding of similarity. *Palm Bay Imports*, 396 F.3d at 1372-73. Additionally, LIV generally does not have a recognized meaning in the English language, which supports a finding of similarity. *Luigino's*, 170 F.3d at 830.

Defendants argue the insertion of the word LOUNGE highlights the differences between the two businesses and distinguishes the marks. Defendants cite a previous finding by the Court that Plaintiff had not alleged facts showing the similarity between the two marks other than the words themselves. (Case No. 8:11CV37, Filing No. 49, 7.) In the New Complaint, however, Plaintiff exhibits images of the parties' marks, provides a more detailed explanation of how the marks are alike in addition to the words themselves, and supports its position with case law.

**C.     The degree to which the products compete with each other.**

The inquiry into the parties' services broadly examines the relationship of the services in the marketplace. *Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1056 (8th Cir. 2005). This factor favors a finding of likelihood of confusion when it is reasonable for consumers to think the services came from the same source or are somehow affiliated. *Id.* Plaintiff's factual allegations are sufficient to show it is plausible that the parties' services are in competition with each other.

Plaintiff states the parties' services are identical or virtually identical and target the same class of consumers. Defendants, like Plaintiff's LIV nightclub, host live DJ performances, musical performances, private parties, and events. Plaintiff exhibits in its New Complaint a vivid, provocative promotion for Defendants' weekly "Live at LIV Lounge" DJ parties that displays a woman's bare breasts covered only by headphones. Plaintiff

13

asserts this promotion demonstrates that the parties' services are identical and that Defendants do not operate a low key lounge. Plaintiff argues that although Defendants describe their business as a low key lounge, this is not an accurate description of how Defendants actually operate their property.

Plaintiff is not collaterally estopped from pleading its services are in competition with Defendants' services, despite the Court's previous finding that Defendants operate a bar/lounge in Omaha, Nebraska, while LIV nightclub is an exclusive and high-energy nightspot. (Case No. 8:11CV37, Filing No. 42, 2, 3.) The following four elements of collateral estoppel must be established: (1) the identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Cunningham v. Prime Mover, Inc.*, 252 Neb. 899, 901 (1997). Here, the issue is not identical to the issue in the previous finding. In the time that has elapsed since the previous finding, the nature of Defendants' business may have changed, or Defendants may not be describing their business accurately.

### D. Bad faith intent to "pass off" services as those of the trademark owner.

Plaintiff makes two separate bad faith intent arguments. First, Defendants' initial adoption of the LIV mark was in bad faith, and second, Defendants' continuing use of the mark after receiving desist letters from counsel is in bad faith. Neither of these arguments is plausible. This is not, however, dispositive of the motion because the six factors of likelihood of confusion are not a "precise test." *Duluth News-Tribune*, 84 F.3d at 1096.

Plaintiff is collaterally estopped from arguing bad faith intent at the time of the adoption of the mark. The Court previously stated in its first order that "[n]o evidence demonstrates Defendants' use was in bad faith or that Defendants intentionally adopted the mark to trade on Plaintiff's goodwill." (Case No. 8:11CV37, Filing No. 42, 18.) The Court found that the evidence demonstrated that Defendants planned to use the LIV mark before Plaintiff filed its trademark registration. (*Id.*) The Court subsequently recognized this finding in its second order. (Case No. 8:11CV37, Filing No. 49, 2.) The previous finding is binding on Plaintiff because it was in the first order which dismissed the claims with prejudice. *See Larken Inc. v. Wray*, 189 F.3d 729, 732 (8th Cir. 1999) (dismissal with prejudice constitutes a final judgment on the merits). The elements of collateral estoppel are met because the identical issue of bad faith intent at the time of the adoption of the mark has already been decided, the claims were dismissed with prejudice–making the judgment final and on the merits, the parties are the same, and the issue of bad faith intent was fully and fairly litigated. *See Cunningham*, 252 Neb. at 901 (1997).

Plaintiff's argument that Defendants' continuing use of the mark after receiving desist letters constitutes willful, bad faith intent is not supported by case law. Plaintiff states that "[a]n infringer acts 'willfully' if he knows his conduct constitutes infringement." *RCA/Ariola Int'l. v. Thomas & Grayston Co.*, 845 F.2d 773, 779 (8th Cir. 1988). The *RCA/Ariola* court, however, goes on to explain that "one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." *RCA/Ariola.*, 845 F.2d at 779 (quoting 3 M. Nimmer and D. Nimmer, Nimmer on Copyright § 14.04[B][3] (1987) (footnotes omitted)).

15

Here, it is not plausible that Defendants know their conduct constitutes infringement because they allege, in good faith, that their use of the LIV mark is not trademark infringement. Moreover, case law specifically supports the proposition that a defendant is not acting in bad faith when it refuses, in good faith, to stop using a mark after receiving notice from the plaintiff. *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 427 (S.D.N.Y. 2008); *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 574 (D. Colo. 1997); *Wonder Labs, Inc. v. Proctor & Gamble Co.*, 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990). Plaintiff cannot plead bad faith intent at the time of the adoption of the mark or bad faith intent because of Defendants' continuing use after receiving desist letters.

### E. Incidents of actual confusion.

Plaintiff states "[i]t is axiomatic that a trademark owner is not required to prove or even allege actual confusion in order to established a likelihood of confusion." *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980); *Caesar's World*, 179 USPQ at 16. Plaintiff asserts incidents of actual confusion are more likely to be uncovered during discovery and that it has made sufficient allegations of how and why consumers are likely to believe that Defendants' services are in some way associated with Plaintiff's, thus causing a likelihood of confusion. For the purposes of the Motion, Plaintiff has made factual allegations sufficient to show that incidents of actual confusion may have occurred.

### F. The type of product, its cost, and conditions of purchase.

This factor considers the degree of care exercised by the consumer, which depends on the type of product or service, its cost and conditions of purchase. *SquirtCo*, 628 F.2d

at 1091.  The test here is whether "the court finds that there is a likelihood of confusion in that consumers may be led to believe that the defendant's operations are in some way connected with the plaintiff's entity."  *Caesar's World*, 179 USPQ at 16.  The Court must "stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods."  *Luigino's*, 170 F.3d at 832.

Plaintiff states Defendants target the same class of consumers and all or substantially all of the consumers who visit the Defendants' LIV Lounge are familiar with Plaintiff's LIV nightclub due to its national media coverage which is widely read in Nebraska and surrounding states.  These consumers are likely to believe that Defendants' LIV Lounge is somehow associated with or connected with Plaintiff's property.

Defendants respond that it is ridiculous to suggest that consumers in Omaha, Nebraska, who frequent the LIV Lounge would associate it with the LIV nightclub or that individuals are choosing to go to the LIV Lounge rather than travel to Miami, Florida.  Defendants point to the Court's previous order that found Plaintiff's business is a "high-energy nightclub" while Defendants' business is a "low-key bar and lounge."  (Case No. 8:11CV37, Filing No. 49, 7.)  In that same order, the Court found no factual support that the "same class of customers would frequent both establishments, nor any overlap in customers whatsoever."  (*Id.*)  Defendants argue the New Complaint is equally deficient in alleging how the parties attract the same type of customers and that blanket assertions of national reputation, without more, are insufficient to establish a party's reputation has reached a distant market.  The New Complaint, however, has alleged specific facts in regards to consumers in Nebraska and surrounding states that make it plausible that LIV

17

nightclub's reputation has reached Omaha, Nebraska. The extent of this reputation zone in Omaha, Nebraska, is a factual dispute that is not appropriate for resolution on a motion to dismiss.

## IV. Prayers for Relief Are Not Appropriate Subject Matter for Dismissal.

The Court will not address Defendants' request to dismiss Plaintiff's request for attorney's fees, profits, and punitive damages at this time because forms of relief are not proper subject matter for a Rule 12(b)(6) motion to dismiss. *See Kansas-Nebraska Natural Gas Co. v. City of Hastings, Neb.*, 10 F.R.D. 280, 281 (D. Neb. 1950) ("[M]otions to dismiss either portions of a complaint's prayer or portions of the complaint to which individual aspects of its prayer are responsive should rarely, if ever, be granted . . . The prayer does not control the vitality of a complaint . . . And in the present federal practice the chiseling away of individual issues and the consequent denuding of the entire complaint is not favored."); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) ("[I]t need not appear that the plaintiff can obtain the particular relief prayed for in the complaint, as long as the district judge can ascertain from what has been alleged that some relief may be granted by the court.").

## V. Defendants' Request for Dismissal with Prejudice is Denied.

Defendants' request that the Court dismiss Plaintiff's New Complaint with prejudice is denied because the Court finds that Plaintiff has alleged sufficient facts to establish a plausible claim for trademark infringement under the Lanham Act.

IT IS ORDERED:

    1.    Defendants' Motion to Dismiss (Filing No. 21) is denied; and

    2.    Defendants will respond to the Plaintiff's Complaint on or before July 27, 2012.

Dated this 12th day of July, 2012.

                              BY THE COURT:

                              s/Laurie Smith Camp
                              Chief United States District Judge